## HARRY P. LEAKE ET AL.

*v.*

## ADELAIDA OLIVIERI Y LUCIO DE AREVALO Y AGUILAR ET AL.

---

San Juan, Equity, No. 260.

1. Where an attorney receives a certain interest in a lien from the holder

---

Note.—The question of the personal liability of the purchaser of personal property which is subject to a lien is discussed in a note in 59 L.R.A. 737.

Leake v. Olivieri y Lucio.

thereof, in consideration of services, and subsequently another person purchases the lien from the holder, and the property upon which it is a lien from the owner thereof, and such purchaser is later decreed by the court to be entitled to the possession of the property, the interest of the attorney does not constitute a litigated credit under the provisions of § 1438 of the Civil Code of Porto Rico, which provides that when a litigated credit is sold the debtor shall have the right to extinguish the same by reimbursing the assignee for the price the latter paid for it, the judicial costs incurred by him, and the interest on the price from the day on which the same was paid, and that a credit shall be considered as litigated from the day the suit relating to the same has been answered, and that the debtor may make use of his rights within nine days, counting from the day the assignee should demand payment of him,— as, when the court determined that the purchaser was entitled to the possession of the property, the claim of the attorney ceased to be a litigated credit in the sense contemplated in § 1438, as entitling him to a redemption of the property.

2. Persons purchasing a lien subsequently to the making and performing of a contract by an attorney with the owner thereof, to prosecute all proceedings necessary to determine the extent of the latter's interest in her father's estate, in consideration of an undivided fraction of such lien, did not have such notice of the attorney's contract as to constitute their purchase a fraud against his right in the lien, where it appears that, in a conversation, regarding another matter, between the attorney and such purchasers before their purchase, the attorney advised them to purchase the lien, and endeavored to have them do so, stating, that he represented the owner thereof on contingent basis, but without mentioning the percentage thereof, and that, less than a week thereafter, another conversation was had between them in which, after such purchasers told the attorney that they had purchased the lien, they were then for the first time informed of the attorney's contract and of the amount of his contingent interest in the lien.

3. Where purchasers of property, and of a lien thereon, subsequently to the making and performing of a contract by an attorney with the holder of the lien, to prosecute all proceedings necessary to determine the extent of the latter's interest in her father's estate, in consideration of an undivided fraction of such lien, did not have such notice of the attorney's right as to constitute their purchase a fraud against his interest in the property, and the attorney has not made a tender to such purchasers of the amount expended by them, he is not entitled to redeem the property from such purchasers.

4. Where a person purchases a lien from the holder thereof, with knowl-
edge that another had previously obtained from the holder an un-
divided interest therein, such purchaser is liable to the owner of such
undivided interest, in a sum equal to the value of the latter's in-
terest.

Opinion filed July 29, 1912.

CHARLTON, Judge, filed the following opinion:

This case is the Jarndyce v. Jarndyce of this court. Both in
the length of the time during which it has been here pending in
various suits, actions, and crossbills, as well as in the com-
plexities of the various opposing claims, and in the inconsistent,
if not contradictory, orders that have heretofore been entered
herein.

In an endeavor to clarify this situation, a short summary of
the proceedings will be advisable before considering the ques-
tions of law presented, and for this purpose it will be sufficient
to say:

That upon October 24, 1900, a certain instrument was exe-
cuted by and between certain interests which will be character-
ized as Ilvarado, and certain other interests which will be
characterized as Olivieri, affecting a certain "Estancia called
'Limon,'" composed of 444 cuerdas of land, and certain struc-
tures thereon situated, lying within the municipal jurisdiction
of Juana Diaz, in the district of Ponce, Porto Rico. Under
and by virtue of the terms of this instrument, Olivieri was to
enter upon possession of said estancia, and was to have the
right to occupy the same for a period beginning on August 1,

1900, and terminating on July 31, 1908, at a fixed yearly rental of $1,872, payable January 31st of each year, being for six months rental then due, and six months in advance. Disregarding other provisions of the lease as to repairs, maintenance, taxes, etc., it was provided, in § 8 of said lease, that Olivieri should have the option of purchase of said Estancia, at any time during the life of the lease, at a price of $15,600, in certain partial payments to be made to Alvarado as therein provided, but which are not material to this consideration, as said option was never attempted to be exercised. This instrument was entitled upon its face "Lease and promise of sale."

In the year 1905 a litigation was begun in this court, between the heirs of Olivieri, over a distribution of the property of their paternal ancestor, who had predeceased; and as a result of said litigation the property here in question, then in possession of certain heirs of Olivieri, was placed in the hands of a receiver of this court, and so continued until a decree of this court, hereinafter to be referred to, was entered, placing the respondent Jones in possession of the Estancia Limon.

In the course of the litigation an order was entered in the suit of Olivieri v. Olivieri, Equity 196, in the year 1907, 5 Porto Rico Fed. Rep. 607, in which a former judge of this court, in a consideration of the document of October 24, 1900, *supra,* which is indeterminate in its phraseology as to whether, in the opinion of the judge, the instrument by its terms constituted a "lease" or a "mortgage;" but it is apparent, from an inspection of this order, that the court was attempting to make an agreement among the parties in order to secure a settlement or adjustment, of some character, between the contending parties, and of the complicated situation in which this estate was

placed. This was followed by a further order of the court, to
the effect that, unless a sale or settlement was effected within
six months after the entry of the order, Alvarado should be
authorized to apply to the court for an order setting aside the
agreement which was constituted by the order theretofore entered
therein.

Later, and on August 12, 1909, a further order was entered
in the same suit, on the application of Alvarado, to have turned
over to that interest not only the 444 cuerdas here under con-
sideration, but the entire Estate Limon, consisting of 890
cuerdas, Alvarado proposing to cancel all claim against Olivieri,
and agreeing to pay a certain sum in addition. This was appar-
ently a further attempt on the part of the court to effect a
settlement of the opposing claims of Alvarado and Olivieri, but
no result appears to have followed, and the case continued.

Upon May 18, 1910, a further order of the court was entered
herein, which is claimed by complainants to have been a final
order, and by respondents to be interlocutory. While it is true
that the order did attempt to fix and ascertain certain rights
and interests in what is known as the Olivieri property, includ-
ing the land here in question, an examination discloses that the
court reserved full authority and jurisdiction to further adjudi-
cate the matters involved therein. At about the same time, to
wit, on May 29th, 1910, the respondent Jones purchased from
Alvarado all their right, title, and interest in and to the 444
cuerdas known as "Limon," then in possession of the receiver
of this court; and on July 2, 1910, the respondent Jones filed
in this court his petition to be placed in possession of the prop-
erty so purchased. This petition appears to have had a prompt
hearing, as upon July 21, 1910, an order was entered against

the opposition of the complainants herein; and representatives of the estate of Olivieri and all parties being present or represented, after due notice, and the court having fully heard and considered the petition and objections, and the evidence presented in support and in opposition thereto, and argument of counsel thereon, found and decreed that the petitioner there, and the respondent herein Walter McKay Jones, was entitled to the possession of the premises here in controversy, and the receiver was directed forthwith to place him in possession thereof, as the purchaser from Alvarado, and rightfully entitled to such possession. Further, after reserving a right to determine questions presented by the opposition of the complainants herein, and the heirs of Olivieri, the order closed with the statement, "it being the intent of the court in and by this order to determine and fix the right of possession of the said premises herein described."

Thereafter there were filed various petitions for the vacation of the order of July 21, 1910, as well as amended bills of complaint on behalf of the complainants here and others in interest, but no action appears to have been taken upon these petitions or bills, or other applications, and the matter remained *in statu quo,* until November 16, 1911, when this court ruled upon a motion presented on behalf of Olivieri and others to set aside said order of July 21, 1910, placing the respondent Jones in possession of Limon, which motion was denied by the court on the ground that it had no authority under the law to reverse, modify, or set aside the order so made, as to the main question there decided, to wit, the right of the respondent Jones to the possession of the Estancia Limon.

This brings the litigation entitled Olivieri v. Olivieri, Equity

196, 5 Porto Rico Fed. Rep. 607, to a point where it becomes necessary to consider it in connection with the present suit.

It appears that upon March 20, 1905, the complainants here, being attorneys at law engaged in practice in the island of Porto Rico, entered into a contract with Señora Doña Adelaide Olivieri and her husband, under and by virtue of the terms whereof the complainants here agreed to bring and to prosecute all suits, actions, or proceedings necessary to determine the extent of the right and interest of Doña Adelaide Olivieri in the estate of her father, Felix Olivieri y Cervoni, who had predeceased in the year 1902, leaving claims against a large amount of property, including the whole of the Estancia Limon; in consideration whereof the complainants here were to receive an undivided one-half interest in and to a preferential lien upon the Estancia Limon, which had been created in favor of Adelaide Olivieri under the provisions of the will of her father, Felix Olivieri y Cervoni. In pursuance of such agreement, the complainants here did appear for and in, and did prosecute for and on behalf of, said Adelaide Olivieri, certain actions, suits, and other legal proceedings; but their representation of said Olivieri had ceased before this suit was entered.

It appears from the testimony introduced herein (that of the then complainant Leake, since deceased, and of the respondents Jones and Marvin) that they had a conversation in the city of Ponce, on the evening of May 29, 1910, in relation to Limon, and its ownership, in the course of which Leake told Jones and Marvin that the complainants here had a contract with Adelaide Olivieri, by the terms of which they were entitled to an undivided one-half interest in the preferential mortgage of $5,000 on Limon, hereinbefore referred to, and Marvin and Jones at

Leake v. Olivieri y Lucio.

that time told Leake, either directly, or by inference, that they had earlier, upon the same day, purchased from Adelaide Olivieri all her right, title, and interest in and to said preferential mortgage. The evidence is complicated as to whether the respondents here had even implied notice of the existence of the contract between complainants here and Adelaide Olivieri prior to said conversation, but the weight of evidence appears to be that the first intimation of that fact which came to the knowledge of respondents was in the conversation on the evening of May 29, 1910. It appeared further from the evidence that, in payment for the interest of Adelaide Olivieri, the respondents here had given their check, which had not, at the time of the conversation on the evening of May 29, 1910, been presented for payment.

Thereafter, and upon July 16, 1910, the complainants here filed their bill against the respondents in the present suit, therein setting forth in substance the facts hereinbefore recited, claiming that the contract between Alvarado and Olivieri of October 24, 1900, was in reality a mortgage, and had been so adjudicated by former orders of this court; that the purchase by the respondent Jones, on May 29, 1910, from Alvarado, and from Adelaide Olivieri, of the rights and interests in the Estancia Limon, hereinbefore set forth, were made with notice of complainants' rights in the premises, and that the same were null and void as having been made in fraud of the rights of complainants in the premises. They further averred that they were ready to repay to the respondents here the amounts so paid by them for principal, interest, and taxes, and to assume liability for the deferred payments, if the contracts of sale held by the respondents Jones and Marvin were canceled and delivered to them. The prayer

also included an application for a restraining order and an injunction, and for a receiver, and for an order of court sustaining the prayer and directing and ordering the respondents Jones and Marvin to comply with such order.

The matter came on for hearing at the Ponce term, 1912, at which time the parties appeared in person and by their counsel, witnesses were produced, and evidence, both oral and documentary, introduced; and after full argument of counsel the court reserved its decision upon request made by both parties that written briefs might be submitted, covering the questions involved.

In view of the complications disclosed by the preceding portion of this opinion, and the diversity and difficulty of the same, the court has given long, serious, and careful consideration thereto.

By its decision of November 16, 1911, the court has already disposed of the question of the right of possession of the respondent Jones to the Estancia Limon, in his favor, and the position then taken is now adhered to. There remain, therefore, for consideration, but four questions:

I. Whether, under the facts as disclosed by the evidence, the respondents Marvin and Jones had such notice, express or implied, as constituted their purchase of the interest of Alvarado and of Adelaide Olivieri on May 29, 1910, a fraud against the right and interest of the complainants in the Estancia Limon under their contract with Adelaide Olivieri of March 20, 1905, or not.

II. Whether, even if so, the complainants have made such "tender" as is sufficient, in contemplation of law, to entitle them to sustain this suit, and to obtain the relief here sought.

III. Whether, or even if so, the complainants are in a position, as matter of law, to redeem said Estancia Limon from the respondent Jones.

IV. If neither of the foregoing can be answered in the affirmative, to what relief, if any, the complainants are entitled from the respondent Jones.

## I.

Whether, under the facts as disclosed by the evidence, the respondents Marvin and Jones had such notice, express or implied, as constituted their purchase of the interest of Alvarado and of Adelaide Olivieri on May 29, 1910, a fraud against the right and interest of the complainants in the Estancia Limon under their contract with Adelaide Olivieri on March 20, 1905, or not.

The testimony of the complainant Leake, taken under stipulation, was to the effect that the respondents Marvin and Jones never asked him any direct questions as to the relations of the complainants with Adelaide Olivieri, but that, upon a date not fixed, but from other evidence ascertained to be subsequent to May 18, 1910, and prior to the evening of May 29, 1910, the respondent Jones consulted the complainant Leake about a legal matter unconnected with this controversy, in the course of which, in conversation relating to a decree of Judge Rodey, entered upon May 18, 1910, in relation to the interest of Adelaide Olivieri in the Olivieri estate, it came out that she had, under the will of her father, a preferred claim of 5,000 pesos, which would be a second mortgage to the Alvarado claim, if it was finally declared to be a mortgage; that he, Leake, already

Leake v. Olivieri y Lucio.

knew that the respondents had theretofore purchased the Al-varado lien, and advised Jones that it would be a safe thing for him to buy the mortgage of Adelaide Olivieri, which he, the said Leake, then endeavored to sell to the respondent Jones. He further told Jones that they represented Adelaide Olivieri on a contingent basis, but did not state the percentage thereof. Less than a week thereafter the conversation of May 29, 1910, was had between Leake and Marvin and Jones, beginning in the Ponce theater; from whence, after Marvin and Jones had told Leake that they had bought the interest of Adelaide Olivieri in the mortgage, they adjourned to the office of Leake for a further consultation. It was then for the first time that Marvin and Jones were advised of the contract of the complainants, and of the amount of their contingent interest. Marvin and Jones appeared to be perfectly frank as to this purchase, and stated to Leake, according to his testimony, that they had paid to Adelaide Olivieri one half the amount they had agreed upon, by a check, which could not then have been presented for payment. In response to a request for advice, Leake declined to advise whether it would be best for Marvin and Jones to stop payment on the check or not.

Both Marvin and Jones testified substantially to the same effect as to the conversation on the evening of May 29, 1910, but the recollection of the witness Jones as to the conversation within the week previous was materially different from that of Leake, in that he disclaimed to have been informed, at that time and place, of any terms of representation which existed between Adelaide Olivieri and the complainants here, and that the first notice of any kind which he had of the existence of the contract was in the conversation of May 29th.

Leake v. Olivieri y Lucio.

How these circumstances, so detailed, could constitute a fraud on the part of the respondents as against the rights of the complainants, it is difficult to imagine. The contract between the complainants and Adelaide Olivieri in no way restrained her from disposing of whatever right or interest she might possess in the property Limon. The contract existing between herself and complainants was a private contract, unregistered. The doctrine of "notice by registry" could not, then, apply to any acts of respondents, and in the absence of any information from her, or from any other source, as to any limitation of the interests, whatever they might be, accruing to her under the will of her father, or any information from any other source that her interest consisted of anything less than its whole value, no notice, express or implied, could be imputed to the respondents herein.

But going beyond this, and taking the testimony of the complainant Leake as to the conversation of the week preceding May 29, 1910, as conveying to the respondent Jones knowledge that the complainants had an interest in the affairs of Adelaide, no disclosure of the amount or percentage of that interest was made, as Leake testified, although he advised Jones at that time to purchase the mortgage. If Jones thereafter, in purchase of the interest of Adelaide, which he made, acted under or outside of the advice of Leake, no fraud could be presumed in such purchase, although the doctrine of *caveat emptor* would apply, and Jones might be held to have been warned in his negotiation that the apparent interest of Adelaide in the $5,000 mortgage was less than a whole interest.

## II.

Whether, even if so, the complainants have made such

VI. Porto Rico—9.

Leake v. Olivieri y Lucio.

"tender" as is sufficient, in contemplation of law, to entitle them to sustain this suit, and to obtain the relief here sought.

As preliminary to a suit for equitable relief on the ground of fraud in conveyances or contracts which have been made and completed, in whole or in part, a necessary preliminary is the "tender" by the complaining party to persons against whom relief is sought, of the amounts expended on all accounts by them. This tender must be made in legal current money, which the courts have held to mean either coin of the United States, under the limitations of amount for legal tender imposed by Federal law, or in legal money of the United States, that is, money which is defined by law to be "legal tender;" and courts have held, with practical unanimity, that a tender which was composed in whole or in part of notes issued by national banks was not a sufficient legal tender, for the reason that national bank notes are not legal tender.

How far short of being a tender, in a legal sense, the offer in this case was, is apparent from the absence of any testimony or allegation that any attempt was made, prior to the filing of this suit, to make any tender of money, legal or otherwise; and the complaint itself is the first offer to make reparation (paragraph IX. of complaint) to the respondents for either purchase price, or expenditures, or liabilities assumed. This is indefinite in terms, recites no former offer, and is absolutely insufficient in law as establishing a position in the complainants to entertain this suit upon that ground.

## III.

Whether, even if so, the complainants are in a position, as

matter of law, to redeem said Estancia Limon from the respondent Jones.

From the resolution arrived at in the discussion of the two preceding questions, it is obvious that under the facts the complainants have failed to place themselves in a position to entitle them, by reason of the contract existing between themselves and Adelaide Olivieri, under the provision of the new law of Porto Rico, or otherwise, to make said redemption. Nor is the court of opinion that the interest of complainants constitutes a "litigated credit" under the provisions of § 1438 of the Civil Code of Porto Rico, as follows:

"Sec. 1438. When a litigated credit is sold, the debtor shall have the right to extinguish the same by reimbursing the assignee for the price the latter paid for it, the judicial costs incurred by him, and the interest on the price from the day on which the same was paid.

"A credit shall be considered as litigated from the day the suit relating to the same has been answered. The debtor may make use of his right within nine days, counted from the day the assignees should demand payment of him."

When this court determined by its order and decree of July 21st, 1910, that the respondent Jones was entitled to the possession of Limon, the claim of complainants ceased to be "litigated credit" in the sense contemplated in § 1438, as entitling them to a redemption of said premises. The only right which remained to them thereafter, in the absence of an appeal, the contention of all parties being that the order of July 21, 1910, was a "final order," was a right to recover pecuniary damages from persons whom the court should thereafter hold to be liable therefor. And this controversy, prosecuted in a separate suit,

and not proceeded with in the former suit (Equity 196) by
making the respondents here respondents there, which could
have been done upon application to the court, still further re-
moved the complainants from any right to relief under § 1438.

The court therefore holds, and is of the opinion, that under
the facts as disclosed in this suit, the complainants have no
right of redemption of the Estancia Limon, consisting of 444
cuerdas, as against the respondent Jones or the respondent
Marvin.

## IV.

If neither of the foregoing can be answered in the affirmative,
to what relief, if any, the complainants are entitled from the
respondent Jones.

There was no documentary evidence introduced which would
tend to show that either the respondent Jones or the respondent
Marvin had any written notice of any interest of the complain-
ants in the Estancia Limon, or in the claim of Adelaide Olivieri
thereon. The informal deposition of the complainant Leake goes
only to the effect that in the week of May 22–29, 1910, in the
conversation which took place between Leake and Jones, there
was disclosed by Leake to Jones the fact that the complainants
had an interest in the claims of Adelaide Olivieri as they had
been set forth in the case of Olivieri v. Olivieri, Equity 196,
5 Porto Rico Fed. Rep. 607. As to this suit, and the claims and
the contentions of the parties thereto, no relation of trust existed
between Leake and Jones, Leake was not the attorney for Jones,
but for Adelaide Olivieri, and it is asserted by Leake, and was
not denied by Jones, that Leake, in that conversation, stated to

Leake v. Olivieri y Lucio.

Jones that the complainants here had an interest in the claims of Adelaide Olivieri, that a portion of those claims consisted of the alleged preferential mortgage of $5,000, and that Leake averred that he had authority to act on behalf of Adelaide Olivieri, and offered to sell to Jones, and urged Jones to buy, such preferential mortgage, with knowledge that Jones had already acquired the Alvarado interest in Limon, and averred that the preferential mortgage had an actual money value of $5,000, gold. With this knowledge in his possession, Jones subsequently negotiated with Adelaide Olivieri, individually, and, upon May 29, 1910, purchased from Adelaide Olivieri all her right, title, and interest in said preferential mortgage, for a price and sum and upon terms agreed upon between Jones and Adelaide Olivieri. Such knowledge of a claim of interest on the part of complainants here having been given to Jones, he was put under obligation to prosecute the information so acquired to a definite conclusion, as to the nature and extent of the interest of the complainants here in said preferential mortgage, even although Leake, in the conversation between himself and Jones, and in the subsequent proceedings, was at least as little frank as was Jones, and, as has already hereinbefore been held, was in no position to claim that any subsequent action in relation to the interest of Adelaide Olivieri on the part of Jones, under the facts in this case, could constitute a fraud in law as having been committed by Jones against the complainants here. And as has already hereinbefore been stated, the only principle of law which could be invoked against Jones and in favor of complainants was that, with knowledge as to the existence of a claim of complainants, while he was not debarred from purchase from Adelaide Olivieri, he had information

sufficient to warn him that his purchase from her might not convey to him an absolute interest in the preferential mortgage which he then acquired.

That being the case, and in the absence of any evidence to the contrary, and as the contract for an undivided one-half interest existing between the complainants here and Adelaide Olivieri, is uncontroverted, the court is of the opinion and holds that the respondent Walter McKay Jones is liable for and shall pay to the complainants here, and their substituted representatives, the sum of $2,500, as being an undivided one-half interest in the unattacked value of the preferential mortgage, to wit, the sum of $5,000, with interest thereon at the rate of 6 per cent per annum, from May 29, 1910, until the date of this decree, and that in default of payment by said Jones of said amount and interest within four months after the entry of this decree, with interest at the rate of 6 per cent per annum on the principal amount from the date hereof to the date of payment, execution shall be issued in favor of complainants and against said Jones, to be levied on said property known as the Estancia Limon, situated in the municipality of Juana Diaz, district of Ponce, Porto Rico.

Entry of judgment suspended pending motion.

And it is so ordered.